PIEKARSKI & BRELSFORD, P.C.
2633 E Indian School Rd., Ste. 460
Phoenix AZ 85016
Phone: (602) 956-1161
Fax: (480) 247-4383
Christopher J. Piekarski, AB# 019251
Nathan J. Brelsford, AB# 024853
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **MARCUS ROSS**, an unmarried man, **CARLTON WHITE,** an unmarried man, <br><br>       Plaintiffs, <br><br> vs. <br><br> **O.H.M.N.I. INCORPORATED**, an Arizona Corporation duly licensed to do business in the State of Arizona; **JOHN DOES 1-5**; **JANE DOES 1-5**; and **ABC CORPORATIONS 1-5**, <br><br>       Defendants. | Case No.: 2:10-cv-01073 <br><br> COMPLAINT <br><br> UNPAID OVERTIME; UNPAID WAGES |

Ross, by and through his undersigned counsel, submits the following claims:

**I.**

**JURISDICTION AND VENUE**

1. Ross is a resident of Maricopa County, Arizona.

2. Defendant O.H.M.N.I. Incorporated is an Arizona Corporation duly licensed to do business within the State of Arizona with its principle place of business located within Maricopa County, Arizona.

3. Defendants JOHN DOES 1-5, JANE DOES 1-5 and ABC CORPORATIONS 1-5 are persons or entities that may be liable to Ross whose true identities are presently not known to Ross. Ross reserves the right to amend his complaint to set forth the true names of these persons or entities when they become known to him.

4. All relevant activities took place within Maricopa County, Arizona.

5. This Court has jurisdiction over this matter pursuant to 29 U.S.C. 201 et seq. and 13 U.S.C. 1367.

## II.

## FACTUAL BACKGROUND

### (MARCUS ROSS)

6. Plaintiff Marcus Ross ("Ross") was hired by the Defendant in November, 2007.

7. From November, 2007 until January, 2009 Ross was employed as a "Caregiver."

8. His job duties consisted of cooking, cleaning, driving and performing other routine tasks for disabled individuals residing in the Defendant's various group homes.

9. All of the tasks performed by Ross were done in accordance with the Defendant's employee manuals and regulations.

10. At no time was Ross allowed to exercise any independent decision making or exercise discretion beyond the procedures as set out by the Defendant.

11. While employed as a caregiver from Ross's rate of pay was $10.25 (ten and 25/100 dollars) per hour.

12. From January, 2009 until December, 2009 Ross was promoted to the position of "Assistant Manager."

13. As an assistant manager, Ross's job duties consisted of performing the same tasks as a caregiver.

14. As an assistant manager, at no time was Ross allowed to make any independent decision making or exercise discretion beyond the procedures as set out by the Defendant.

15. While employed as an assistant manager Ross's rate of pay was $10.85 (ten and 85/100 dollars) per hour.

16. From December, 2009 until April 3, 2010 Ross was employed as a "House Manager."

17. As a house manager, Ross's job duties consisted of performing the same tasks as a caregiver. The only substantive difference was that Ross was responsible for the purchase of groceries and household items for the group home residents.

18. While employed as a house manager, Ross was paid on the 1st and 15th of each month a salary rate of $966.00 (Nine hundred sixty six and 00/100) gross per pay period.

19. At all times during his employment with the Defendant, Ross remained "non-exempt" under the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.*, requiring that he be paid time-and-one-half of his hourly rate for all hours over forty (40) per week.

20. During his employment with the Defendant, Ross typically worked between sixty (60) and eighty (80) hours each week.

21. During this period, Ross was never paid time-and-one-half of his hourly rate for all hours over forty (40) per week.

## III.
## FACTUAL BACKGROUND
## (CARLTON WHITE)

22. Plaintiff Carlton White ("White") was hired by the Defendant in September, 2008.

23. From September, 2008 until March, 2009, White was employed as a "Caregiver."

24. His job duties consisted of cooking, cleaning, driving and performing other routine tasks for disabled individuals residing in the Defendant's various group homes.

25. All of the tasks performed by White were done in accordance with the Defendant's employee manuals and regulations.

26. At no time was White allowed to exercise any independent decision making or exercise discretion beyond the procedures as set out by the Defendant.

27. While employed as a caregiver from September, 2008 until March, 2009, White's rate of pay was $10.00 (ten and 00/100 dollars) per hour.

28. From December 21, 2009 until April 15, 2010 White was employed as a "Assistant Manager."

29. As an assistant manager, White's job duties consisted of performing the same tasks as a caregiver.

30. While employed as an assistant manager White was paid on the 1st and 15th of each month at the salary rate of $829.00 (Eight hundred Twenty Nine and 00/100) gross per pay period.

31. During this time, White typically worked seventy two hours per week and was paid $12.00 per hour (Twelve and 00/100 dollars) for hours worked in excess of forty hours per week.

32. At no time was White allowed to exercise any independent decision making or exercise discretion beyond the procedures as set out by the Defendant.

33. At all times during his employment with the Defendant, White remained "non-exempt" under the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.,* requiring that he be paid time-and-one-half of his hourly rate for all hours over forty (40) per week.

34. During his employment with the Defendant, White typically worked between sixty (60) and eighty (80) hours each week.

35. During this period, White was never paid time-and-one-half of his hourly rate for all hours over forty (40) per week.

## IV.

## COUNT ONE

## (UNPAID OVERTIME-PLAINTIFF ROSS)

36. All of the preceding paragraphs are incorporated herein by reference.

37. Throughout his entire employment with the Defendant, Ross typically worked between sixty and eighty hours per week.

38. Ross was never paid one-and-one-half times his hourly rate for hours worked in excess of forty hours per week.

39. Ross was typically paid either his hourly rate or an amount slightly higher than his hourly rate, but substantially less than one and one half times his hourly rate as required by federal law.

40. By the acts and conduct set forth above, Defendant has violated the Fair Labor Standards Act, 29 U.S.C. 255.

41. The conduct of the Defendant was willful as defined by the Fair Labor Standards Act, 29 U.S.C. 255.

## V.

## COUNT TWO

### (UNPAID OVERTIME-PLAINTIFF WHITE)

42. All of the preceding paragraphs are incorporated herein by reference.

43. Throughout his entire employment with the Defendant, White typically worked between sixty and eighty hours per week.

44. White was never paid one-and-one-half times his hourly rate for hours worked in excess of forty hours per week.

45. White was typically paid either his hourly rate or an amount slightly higher than his hourly rate, but substantially less than one and one half times his hourly rate as required by federal law.

46. By the acts and conduct set forth above, Defendant has violated the Fair Labor Standards Act, 29 U.S.C. 255.

47. The conduct of the Defendant was willful as defined by the Fair Labor Standards Act, 29 U.S.C. 255.

## VI.

### (UNPAID WAGES-PLAINTIFF ROSS)

48. All of the preceding paragraphs are incorporated herein by reference.

49. Ross, in accordance with the Defendant's policy, submitted time sheets reflecting hours worked on a weekly basis.

50. The Defendant would routinely fail to pay Ross for all hours actually worked as reflected on his time sheets.

51. The Defendant often failed to pay Ross at the end of each pay period as prescribed by its own policy as well as state and federal statutes.

52. The reduction of hours constitutes a failure to pay wages under Arizona Revised Statue §23-355, for which Ross is entitled to treble damages.

## VII.

## (UNPAID WAGES-PLAINTIFF WHITE)

53. All of the preceding paragraphs are incorporated herein by reference.

54. White, in accordance with the Defendant's policy, submitted time sheets reflecting hours worked on a weekly basis.

55. The Defendant would routinely fail to pay White for all hours actually worked as reflected on his time sheets.

56. The Defendant often failed to pay White at the end of each pay period as prescribed by its own policy as well as state and federal statutes.

57. The reduction of hours constitutes a failure to pay wages under Arizona Revised Statue §23-355, for which White is entitled to treble damages.

**WHEREFORE**, Ross prays for judgment against Defendants as follows:

1. For damages pursuant to Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* in an amount to be proven at trial;

2. For damages pursuant to the Arizona Wage Statute, Arizona Revised Statue §23-355, in an amount to be proven at trial;

3. For the Ross's reasonable attorney's fees and costs in bringing this matter; and

4. For such other relief as the Court may deem just and proper.

**WHEREFORE**, White prays for judgment against Defendants as follows:

5. For damages pursuant to Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* in an amount to be proven at trial;

6. For damages pursuant to the Arizona Wage Statute, Arizona Revised Statue §23-355, in an amount to be proven at trial;

7. For the Ross's reasonable attorney's fees and costs in bringing this matter; and

8. For such other relief as the Court may deem just and proper.

RESPECTFULLY Submitted this 17th day of May, 2010.

                                        PIEKARSKI & BRELSFORD, P.C.

                              By: /s/ Christopher J. Piekarski
                                   Christopher J. Piekarski
                                   2633 E Indian School Road
                                   Suite 460
                                   Phoenix, AZ 85016
                                   Attorney for Ross & White